UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES BRYANT | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:13-CV-917-SPM |
| | ) |
| SCOTT LAWRENCE, [1] | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This case is before the undersigned on a petition for writ of habeas corpus under 28 U.S.C. § 2254, filed by Petitioner James Bryant. (Doc. 1). Petitioner is represented by counsel. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 14). For the reasons stated below, the petition will be denied.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

On September 17, 1975, Petitioner was convicted of first-degree murder and sentenced to life imprisonment. Resp't Ex. A, Doc. 8-1, at p. 3. After two parole releases and two revocations, Petitioner was again released on parole on March 3, 2005. *Id.* at p. 2. As a condition of release, Petitioner agreed to numerous conditions, including obeying all federal and state laws and not consuming intoxicating beverages. Resp't Ex. C, Doc. 8-1, at p. 6.

---

[1] Since the filing of his petition, Petitioner has been transferred to Algoa Correctional Center, where Scott Lawrence is the Warden. Scott Lawrence will therefore be substituted as the proper respondent. *See* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts.

1

On January 19, 2011, Sgt. Troy Thurman of the Cole County Sheriff's Department responded to a domestic disturbance call from Petitioner's wife at the time, Joyce Bryant ("Mrs. Bryant"). Pet'r Ex. A, Doc. 1-2, at p. 20. According to the police report, Mrs. Bryant called from the neighbors' house, where she was hiding from her spouse. *Id.* Mrs. Bryant told Sgt. Thurman that she and Petitioner had been sitting in the living room drinking beer and talking. *Id.* At some point, they began to disagree, and Petitioner jumped up and started choking her with both hands. *Id.* at 20-21. Mrs. Bryant told Sgt. Thurman that she thought he was going to kill her, and then he suddenly stopped. *Id.* at 21. She said she was afraid for her life and was scared of Petitioner. *Id.* She said that she had called from the neighbors' house because Petitioner had taken all the phones in the house so that she could not call 911. *Id.* Sgt. Thurman observed that Mrs. Bryant was visibly upset and crying. *Id.* He also saw that her eyes had what appeared to be petechial hemorrhaging from being choked. *Id.* He saw that her left eye was swelling and turning black and blue and looked like she had been struck (though she denied remembering being struck). *Id.* The only marks present on her neck were what appeared to be fingernail scratches on one side. *Id.* Sgt. Thurman went to Petitioner's home and asked Petitioner what had happened, and Petitioner told him nothing had happened. *Id.* Sgt. Thurman explained that because Petitioner did not wish to explain what had happened, Sgt. Thurman was going to arrest him for domestic assault 2nd based on what his wife had stated. *Id.* He arrested Petitioner. *Id.*

On January 24, 2011, as a result of Petitioner's arrest and Sgt. Thurman's report, Missouri Board of Probation and Parole ("Board" or "Parole Board") Officer Rhonda Muenks issued a Field Violation Report for Petitioner. Pet'r. Ex. A-1. This report listed Petitioner's alleged parole violations: a violation of the condition that he would obey all federal and state laws, and a violation of the condition that he would not consume any intoxicating beverages.

Pet'r Ex. A-1, Doc. 1-2, at p. 1. The Field Violation Report described the January 19 incident in some detail, including the alleged choking and the alleged alcohol consumption. *Id.* at pp. 1-3. Officer Muenks recommended revocation because Petitioner had "engaged in actions that have his wife fearing for her life." *Id.* at p. 3.

On February 16, 2011, Petitioner signed a document stating that a preliminary hearing would be held on February 17, 2011, that the purpose of the hearing was to determine whether probable cause or reasonable grounds existed to refer Petitioner's case to the Parole Board, and that Petitioner was being charged with two violations: "Violation of Condition of #1-LAWS, by being arrested on 1/19/11 in Cole County for the Class C Felony of Domestic Assault 2nd (case number 11AC-CR00270)," and "Violation of Condition #10.1-SPECIAL CONDITIONS, by allegedly consuming alcohol on 1/19/11." Pet'r Ex. A-1, Doc. 1-2, at p. 6. Also on February 16, 2011, parole officers created a second Field Violation Report noting that a preliminary hearing would be held on February 17, 2011, with the hearing officer being Sara Lemberger and the witnesses (by speakerphone) to be Sgt. Thurman and Parole Officer Rhonda Muenks. Pet'r Ex. A-2, Doc. 1-2, at pp. 4-5. It was noted that Petitioner had requested no witnesses. *Id.* This report stated the conditions Petitioner was alleged to have violated and referred back to the January 24, 2011 Field Violation Report for additional details. *Id.*

The February 17, 2011 preliminary hearing is summarized in a third Field Violation Report prepared the same day. Pet'r Ex. A-4, Doc. 1-2, at pp. 6-8. It was noted that Petitioner had acknowledged receipt of the Field Violation Reports dated January 24 and February 16, 2011, and had received notice of the hearing. *Id.* In his briefing, Petitioner states that he received "the field violation report" (it is unclear which one) only minutes before the hearing began. Traverse, Doc. 12, at p. 6. Petitioner testified, and Sgt. Thurman participated by telephone. Pet'r

3

Ex. A-3, Doc. 1-2, at pp. 7-8. Sgt. Thurman testified to the information in the police report and also testified that he had detected a faint odor of intoxicants emanating from Petitioner (a detail not in the police report). *Id.* at p. 8. Petitioner denied choking or striking Mrs. Bryant and denied consuming intoxicants. *Id.* Petitioner testified that he and his wife had had a conversation about Petitioner's frustration with Mrs. Bryant's lack of employment and the possibility that he was "putting her out" of the house. *Id.* Petitioner also testified that as Mrs. Bryant was leaving, she stated, "You will regret this." *Id.* He further testified that Mrs. Bryant left the house for about 30 to 35 minutes before returning and asking if she could stay the night; this was several minutes before officers knocked on the door and arrested him. *Id.* When provided with photos of Mrs. Bryant depicting a black eye, Petitioner indicated that she must have injured herself during the time she left the residence and then called law enforcement with the made-up story about an assault. *Id.* Petitioner also pointed out that law enforcement had not administered a breathalyzer to ascertain whether he had been drinking. *Id.* at p. 9. Upon questioning by Petitioner, Sgt. Thurman testified that when they spoke, Petitioner's speech was not slurred, his gait was not staggered, and he was not behaving irrationally. Mem. Supp. Pet'n, Doc. 1-1, at p. 6. The hearing officer found that there was probable cause to believe that the alleged violations had occurred based on the offense report and the photos of the victim. Pet'r Ex. A-3, Doc. 1-2, at p. 9.

On March 31, 2011, Petitioner was advised that his revocation hearing would be held on April 14, 2011. Resp't Ex. E, Doc. 8-1, at p. 9. On April 14, 2011, a revocation hearing was held. Resp't Ex. D, Doc. 8-1, at p. 7. Mrs. Bryant was not produced as a witness, and Petitioner indicates that the hearing officer commented that "the [Parole Board] had no subpoena power to get her there." Mem. Supp. Pet'n, Doc. 1-1, at p. 7; *see also* Pet'r Ex. A-11, Doc. 1-2, at p. 29.

The record contains no additional details regarding her absence. Petitioner testified at the hearing, as did Sgt. Thurman. Resp't Ex. D, Doc. 8-1, at p. 7. On May 3, 2011, the Board issued a notice stating that it found, by a preponderance of the credible evidence, that Petitioner had knowingly violated Condition #1 of his parole conditions "in that on 1-19-2011 that Joyce Bryant reported to Deputy Thurman of the Cole County Sherriff Department that you assaulted her and caused physical injury. You were arrested and charged with Assault 1st degree and this charge is still pending." *Id.* It also stated that, independent of the preceding finding, "the Board finds that you knowingly violated Condition #10 Alcohol, of the Conditions and Orders of (Parole Release), in that on 1-19-2011 your wife reported to Deputy Thurman that you had been drinking alcohol and Deputy Thurman testified at your revocation hearing that he smelled alcohol on your person at the time of your arrest." *Id.* The Board stated that it had decided to revoke Petitioner's parole release. *Id.*

On July 20, 2011, Petitioner appealed the Board's decision. Pet'r Ex. A-7, Doc. 1-2, at pp. 14-18. The appeal was apparently denied. On September 26, 2011, Mrs. Bryant informed Petitioner's attorney that she would no longer participate in the domestic assault trial and that if she were forced to testify, she would only do so on his behalf. Pet'r Ex. A-8, Doc. 1-2, at p. 19. On December 14, 2011, the domestic assault charges against Petitioner were dropped pursuant to a *nolle prosequi*. Pet'r Ex. A-4, Doc. 1-2, at p. 10. On September 20, 2012, Mrs. Bryant, by then divorced from Petitioner, wrote a letter to the Parole Board, explaining that her prior account had been untrue and that Petitioner was innocent of the charges against him. Pet'r Ex. A-10, Doc. 1-2, at p. 26. Mrs. Bryant stated that if she had been notified of the revocation hearing, it would have been clear that he was innocent of the charges. *Id.*

Petitioner filed a petition for a writ of habeas corpus under Missouri Supreme Court Rule 91 in the Circuit Court of Mississippi County, Missouri, asserting that he was denied his right to confront his accuser, as well as other claims. Pet'r Ex. A-11, Doc. 1-2, at pp. 27-34. The Circuit Court denied the petition without explanation. Resp't Ex. A-12, Doc. 1-2, at p. 36. The Missouri Court of Appeals and the Supreme Court also denied the petition without explanation. Resp't Ex. B, Doc. 8-1, at p. 4.

On May 15, 2013, Petitioner filed the instant petition for a writ of habeas corpus. Petitioner asserts two grounds for relief: (1) that his due process rights were violated because he was denied the right to confront his chief accuser at his final revocation hearing, and (2) that his due process rights were violated because he was not provided with adequate notice or evidence before his preliminary hearing.

## II. LEGAL STANDARD

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may not grant relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

6

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedents "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

### III. DISCUSSION

#### A. Ground One: Violation of Due Process—Denial of Right to Confront and Cross-Examine Adverse Witness at Revocation Hearing

Petitioner first argues that his right to due process was violated when he was not given the opportunity to cross-examine Mrs. Bryant at his final revocation hearing. Petitioner raised this claim in his state habeas petition, and it was summarily denied by the circuit court, the Missouri Court of Appeals, and the Missouri Supreme Court. Although the state courts did not

7

state their reasons for the denials, a state court's summary decision is presumed to be on the merits for purposes of habeas review. *See Carter v. Bowersox*, 265 F.3d 705, 712 (8th Cir. 2001). Despite the summary nature of the state court's decision, this Court still must apply the deferential standards of 28 U.S.C. § 2254(d):

> By its terms § 2254(d) bars relitigation of any claim "adjudicated on the merits" in state court, subject only to the exceptions in §§ 2254(d)(1) and (2). There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.

*See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011). *See also Brown v. Luebbers*, 371 F.3d 458, 462 (8th Cir. 2004) (en banc) ("[T]he 'summary nature' of the discussion of the federal constitutional question [in the state court decision] does not preclude application of the AEDPA standard.").

The Supreme Court has noted that "revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). However, in *Morrissey*, the Supreme Court recognized that parolees have a right to some due process before their parole is revoked. *Id.* at 481-486. It held that during a final revocation hearing, a parolee is entitled to the following "minimum requirements of due process":

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 488-89. The Supreme Court noted that "there is no thought to equate this [final] parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.* at 489.

At issue in Ground One of the petition is "(d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." Petitioner argues that this right was violated because his primary accuser, Mrs. Bryant, was not called as a witness at his final revocation hearing, and the Parole Board did not give an explanation of why she was not called. Petitioner argues that because his wife's account of the alleged domestic assault and alleged drinking of alcohol was the primary basis of the alleged violations, the Parole Board should have produced her to testify and be subject to cross-examination, instead of simply producing Sgt. Thurman to testify about what Mrs. Bryant had told him. Petitioner also argues that had he been able to cross-examine Mrs. Bryant, he might have undermined her story. To support that claim, Petitioner submits two letters Mrs. Bryant wrote indicating that her story had been false—one written five months after the final revocation hearing, and the second written a year after that.

The Court first considers whether Petitioner is entitled to relief under § 2254(d)(1), which requires an analysis of whether the state court's adjudication of this claim resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." In *Morrissey*, the Supreme Court provided that parolees generally have the right to confront and cross-examine adverse witnesses absent a showing of good cause for not allowing confrontation, but it did not specify all of the circumstances that would or would not constitute "good cause." It also emphasized that the

process should be "flexible enough to consider evidence . . . that would not be admissible in an adversary criminal trial." *Morrissey*, 408 U.S. at 489. The Supreme Court later emphasized that it "did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence." *Gagnon v. Scarpelli*, 411 U.S. 778, 782 n.5 (1973) (extending *Morrissey*'s due process protection to probation revocation proceedings).

Applying *Morrissey* and *Gagnon*, the Eighth Circuit has found that the authority holding the revocation hearing[2] should balance the parolee's need for confrontation against the government's reasons for not allowing confrontation, with the factors to be considered including (1) the government's explanation for why confrontation is undesirable or impractical, and the (2) the reliability of the evidence which the government offers in place of live testimony. *See United States v. Martin*, 382 F.3d 840, 844-45 (8th Cir. 2004); *United States v. Bell*, 785 F.2d 640, 642-43 (8th Cir. 1986). The Eighth Circuit has found that "where the government demonstrates that the burden of producing live testimony would be inordinate and offers in its place hearsay evidence that is demonstrably reliable, it has made a strong showing of good cause. Where, on the other hand, the government neither shows that presenting live testimony would be unreasonably burdensome nor offers hearsay evidence that bears indicia of reliability, the probationer is entitled to confrontation." *Bell*, 785 F.2d at 643. The failure of the hearing officer or trial court to make explicit findings about why witnesses were not produced for confrontation does not necessarily establish a *Morrissey* violation or require remand, if the record is sufficient for the reviewing court to determine whether good cause was present. *See id.* at 643 n.3 (noting that although "[t]he District Court did not make an explicit finding that there was good cause for

---

[2] In many of the cases applying *Morrissey*, the revocation hearing at issue was held by the federal district court rather than by a state parole board.

dispensing with confrontation," remand was not necessary because "the record is sufficiently clear to enable us to review the District Court's implicit findings"); *United States v. Kelley*, 446 F.3d 688, 693 (7th Cir. 2006) (noting that although "the district court ideally should have explained on the record why the hearsay was reliable and why that reliability was substantial enough to supply good cause for not producing the Pattersons as live witnesses," the Seventh Circuit "ha[s] not strictly required district courts to make explicit reliability and good cause findings").

Courts in the Eighth Circuit and elsewhere have frequently found that *Morrissey*'s right to confrontation is not violated where the evidence admitted in place of live adverse witness testimony bears substantial indicia of reliability, with or without a substantial reason offered for why it would be difficult to produce the adverse witness. *See Kelley*, 446 F.3d at 689-90, 692-93 (no violation of *Morrissey*'s right to confrontation where the government's only witness was an officer who testified that the victims had reported to him that the parolee had punched them and shown them a gun; reasoning that the officer's testimony bore substantial indicia of reliability because the officer's personal observations of the victim's injuries and the officer's observation of a gun in the trunk of the parolee's car corroborated the victims' accusations); *Bell*, 785 F.2d at 643-45 (no violation of *Morrissey*'s right to confrontation where police report of a driving-while-intoxicated offense was admitted without the testimony of the arresting officer; considerable expense would have been involved in obtaining the officer's testimony; and the probationer's admissions that he had been drinking and was driving at night without his lights on enhanced the reliability of the report); *United States v. Burkhalter*, 588 F.2d 604, 607 (8th Cir. 1978) (no violation of *Morrissey*'s right to confrontation where the court admitted the probationer's vocational instructor's out-of-court statement that the probationer had been absent from classes;

the evidence offered was demonstrably reliable because the instructor was familiar with the defendant, because it was the instructor's job to monitor the defendant's behavior and school attendance, and because the defendant's own admissions tended to corroborate the out-of-court statement); *United States v. Pattman*, 535 F.2d 1062, 1063-64 (8th Cir. 1976) (probationer's due process rights were not violated when information from a police report was admitted, without the live testimony of the arresting officer, to show the fact that an arrest occurred, because the police report was reliable evidence of the fact of arrest).

In light of the above cases, it was not unreasonable for the state court to find that there was good cause for the Parole Board not to produce Mrs. Bryant as a witness and that therefore *Morrissey*'s limited right to confront adverse witnesses was not violated. First, as Petitioner points out, the hearing officer indicated that Mrs. Bryant was not within the Parole Board's subpoena power. Petitioner has provided no evidence or argument to refute this assertion, and it was not an unreasonable consideration in determining whether to call her. *Cf. Bell*, 785 F.2d at 644 (considering whether officers were within subpoena power of the revoking court in assessing whether there was good cause for not producing them). Second, even assuming that it would have been possible and practical for the Parole Board to produce Mrs. Bryant as a witness, Sgt. Thurman's testimony bore sufficient indicia of reliability that admission of his testimony without that of Mrs. Bryant was not unreasonable under the law as clearly established by the Supreme Court. Although much of Sgt. Thurman's testimony consisted of his hearsay account of what Mrs. Bryant told him, that account was corroborated by his own personal observations. Mrs. Bryant's account of Petitioner choking her is corroborated by Sgt. Thurman's observation of her injuries, including petechial hemorrhaging in both of her eyes that he found consistent with choking. Sgt. Thurman also observed Mrs. Bryant to be visibly crying and upset. Moreover, Mrs.

Bryant's statement that Petitioner was drinking alcohol is corroborated by Sgt. Thurman's testimony that he smelled a faint odor of alcohol on Petitioner, which indicated to him that Petitioner had been drinking. The state court could reasonably have found that these facts, taken together, established that Sgt. Thurman's testimony was sufficiently reliable that there was good cause for not producing Mrs. Bryant at the final revocation hearing under *Morrissey*.[3]

Petitioner asks the Court to follow *Belk v. Purkett*, in which the court granted habeas relief based in part on its finding that the parolee should have been permitted to cross-examine adverse witnesses against him instead of having those witnesses' accounts presented only through police reports and victim statements. 15 F.3d 803, 808-09, 812-14 (8th Cir. 1994). However, *Belk* does not provide a basis for habeas relief in the instant case. First, because *Belk* was decided before AEDPA was enacted, the Eighth Circuit in *Belk* was not evaluating whether a state court's decision denying the claim was contrary to, or represented an unreasonable application of, clearly established law *as determined by the Supreme Court*. Instead, the Eighth Circuit was simply applying *Morrissey* to the facts of the case before it. The Supreme Court has made it clear that "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" under 28 U.S.C. § 2254(d)(1) and "therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012). Thus, even if the state court decision in the instant case were inconsistent with the Eighth Circuit's holding in *Belk*, that would not be a basis for granting habeas relief unless the state court decision was also an unreasonable application of Supreme Court law—which the Court has

---

[3] Petitioner suggests at a few points in his brief that his rights may have been violated based on the Board's failure to produce Mrs. Bryant as a witness at the *preliminary* hearing. To the extent that he is making such an argument, it is without merit. For a preliminary hearing, *Morrissey* requires only that an adverse witness be made available for questioning "[o]n request of the parolee." 408 U.S. at 487. The undisputed evidence in the record shows that Petitioner requested no witnesses at his preliminary hearing. Pet'r Ex. A-2, Doc. 1-2, at pp. 4-5.

13

found it was not. Second, *Belk* is distinguishable on its facts, because the evidence offered in lieu of live testimony in *Belk* bore no substantial indicia of reliability. In *Belk*, unlike the present case, no testimony was offered at the hearing that corroborated the hearsay relied on; the parolee was the sole witness at the hearing. 15 F.3d at 810. Moreover, in *Belk*, the writer of the report relied on expressed doubt about the credibility of the victim's account as described in the report, stating, "There appears to arise out of this investigation, a considerable creditability (sic) issue with both the victim and the perpetrator as to the authenticity of the information and the character of both." *Id.* These facts make *Belk* distinguishable from the instant case, in which the hearsay relied on was corroborated by Sgt. Thurman's personal observations of the victim's injuries and the odor emanating from Petitioner.

The Court next considers whether Petitioner is entitled to relief under 28 U.S.C. § 2254(d)(2), which requires a finding that the state court's adjudication of his claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Petitioner makes no specific arguments regarding this prong, and the Court finds that he has not satisfied it. As discussed above, the state court's implicit finding that Sgt. Thurman's testimony about Mrs. Bryant's account was sufficiently reliable that Mrs. Bryant did not have to be produced is supported by the record, including Sgt. Thurman's personal observations of Mrs. Bryant's injuries and Sgt. Thurman's personal observations of Petitioner.

For all of the above reasons, the Court cannot say that the state court's decision on Petitioner's claim was either contrary to, or an unreasonable application of federal law, as established by the Supreme Court, nor can it say that it involved an unreasonable determination of the facts presented to the state court. Therefore, Ground One must be denied.

### B. Ground Two: Failure to Disclose Evidence and Provide Adequate Notice Prior to Preliminary Hearing

In Ground Two, Petitioner argues that the Parole Board violated his due process rights by failing to provide him with adequate notice or evidence at, or prior to, his preliminary hearing. Petitioner asserts that he raised this claim in the state habeas petition he filed in the Circuit Court of Mississippi County. Pet'n, at pp. 6-7. Respondent appears to accept this assertion. *See* Resp., Doc. 8, at p. 5. However, the Court's review of the record shows that the state habeas petition does not include the claim in Ground Two. *See* Pet'r Ex. A-11, Doc. 1-2, at pp. 27-36. Thus, arguably, Petitioner's claim is procedurally defaulted based on Petitioner's failure to present his claims in state court, and should be denied on that basis.[4] However, the Court need not address the question of procedural default, because the Court finds that Ground Two fails on the merits.

Petitioner first argues that he was denied the right to "(b) disclosure [of] evidence against him," described in *Morrissey*, because he was not given sufficient information about the charges against him prior to the preliminary hearing. *See* Mem. Supp. Pet'n, Doc. 1-1, at p. 14. However, the disclosure-of-evidence requirement described in *Morrissey* applies only to final revocation

---

[4] To preserve a claim for federal habeas review, a state prisoner must present that claim to the state court and allow that court the opportunity to address the claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* In Missouri, the constitutionality of parole revocation proceedings may be addressed through a state habeas petition under Missouri Supreme Court Rule 91. *See Green v. State*, 494 S.W.2d 356, 357 (Mo. 1973); *Aziz v. Johnson*, No. 4:09CV1054CAS/MLM, 2009 WL 6606933, at *5 (E.D. Mo. Nov. 24, 2009) (noting that a state habeas petition under Rule 91 is a procedure by which the petitioner could have challenged the revocation of his parole in state court to avoid procedural default), Report and Recommendation adopted in *Aziz v. Johnson*, 2010 WL 2520649 (E.D. Mo. June 15, 2010). It does not appear that Petitioner ever presented this claim in any state court proceeding.
    The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Moore-El*, 446 F.3d at 896 (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). Petitioner offers no argument as to why the Court should find cause for the failure to include this claim in the habeas petition.

hearings. *See Morrissey*, 408 U.S. at 486-88. With respect to a *preliminary hearing*, *Morrissey* requires only that "the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he had committed a parole violation," and that "the notice should state what parole violations have been alleged." *Id.* at 486-87. Thus, Petitioner's argument that he should have received police reports, witness statements, or other evidence before the preliminary hearing is without merit. The only relevant question is whether he received the notice that *Morrissey* requires for preliminary hearings.

The record is somewhat unclear regarding precisely what information Petitioner was given prior to the preliminary hearing. However, even if the Court gives Petitioner every possible benefit of the doubt and presumes that he did not receive any Field Violation Reports, police reports, witness statements, or other evidence before the preliminary hearing, the record shows that *Morrissey*'s requirements were satisfied. On February 16, 2011, Petitioner signed a notice stating that a preliminary hearing would be held on February 17, 2011, that the purpose of the hearing was to determine whether probable cause or reasonable grounds existed to refer Petitioner's case to the Missouri Board of Probation and Parole, and that Petitioner was being charged with two violations: "Violation of Condition of #1-LAWS, by being arrested on 1/19/11 in Cole County for the Class C Felony of Domestic Assault 2nd (case number 11AC-CR00270)," and "Violation of Condition #10.1-SPECIAL CONDITIONS, by allegedly consuming alcohol on 1/19/11." Pet'r Ex. A-1, Doc. 1-2, at p. 6. That notice satisfies *Morrissey*'s requirements. Moreover, statements in the January 24, 2011 Field Violation Report clearly show that Petitioner had been confronted with, and had responded to, both alleged parole violations several weeks before the preliminary hearing. That report describes the alleged assault on Mrs. Bryant and states, "In response to the above violation, [Petitioner] stated that he did not hit [Mrs. Bryant]."

Pet'r x. A-1, at p. 2. It also describes the allegation that Bryant had consumed alcohol on January 19, 2011, and states, "In response to the above violation, Bryant stated he had not consumed alcohol but [Mrs. Bryant] had." *Id.*

In light of the above, Petitioner's suggestion that he was unable to prepare an adequate response to the charges against him—for example, by arranging for the testimony of his sons to say that he had not choked his wife and had not been drinking—is without merit. Petitioner may not have had every detail of the accusations against him prior to the preliminary hearing, but he knew well before the preliminary hearing that he was being charged with parole violations for assaulting his wife and for drinking alcohol, and he knew when and for what purpose his preliminary hearing was being held. That is all *Morrissey* requires.

The facts above also distinguish this case from *Belk*. In *Belk*, it appears that the parolee was not given any notice of the alleged parole violations until a few minutes before the hearing, and the court reasonably questioned how he could be expected to present a defense "when he does not know with what, specifically, he has been charged." 15 F.3d at 806. Here, Petitioner knew well before the preliminary hearing that he was being charged with assaulting his wife and drinking alcohol on January 19, 2011, and he could certainly have attempted to develop evidence relevant to those charges prior to the preliminary hearing.

For all of the above reasons, Ground Two is without merit and must be denied.

## IV. CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the

petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2); *Tiedman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). The Court finds that reasonable jurists could not differ on Petitioner's claim, so the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

A separate Judgment shall accompany this Memorandum and Order.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of August, 2016.